Paul C. Wilson, Judge
This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, § 4.1. Relator, Jackson County Prosecuting Attorney Jean Peters-Baker *383 ("Relator"), seeks a writ of prohibition barring Respondent, Judge Bryan E. Round ("Respondent"), from enforcing his order disqualifying the entire Jackson County Prosecuting Attorney's Office ("PAO") in the underlying post-conviction case. As in State ex rel. Gardner v. Boyer , 561 S.W.3d. 389, 2018 WL 6321238 (Mo. banc 2018), also handed down this date, Respondent's order fails to comply with this Court's holding in State v. Lemasters , 456 S.W.3d 416 (Mo. banc 2015), and will cause irreparable harm if relief is not granted. Accordingly, this Court's preliminary writ of prohibition is now made permanent.
Background
Following a jury trial, the movant in the underlying case, Tyrone Skinner was convicted and sentenced accordingly.[1] Skinner appealed, and Jeanette Wolpink of the appellate division of the Missouri Public Defender System ("MPDS") was appointed to represent him. Wolpink represented Skinner throughout his direct appeal, and his convictions and sentences were affirmed. State v. Skinner , 494 S.W.3d 591 (Mo. App. 2016). After Skinner's appeal was resolved, but before his amended post-conviction motion was filed, Wolpink left the MPDS and was hired by the PAO.[2]
When Wolpink joined the PAO, a screening process was implemented to ensure Wolpink would not participate in any cases in which she was involved while employed by the MPDS (or any case related to such cases). Specifically, the prosecuting attorney directed all assistant prosecuting attorneys to review their current cases to determine whether Wolpink had been previously involved. Once the cases in which Wolpink had been previously involved had been identified, the deputy prosecuting attorney sent an office-wide e-mail indicating no one was to have contact with Wolpink regarding those cases. This list of cases was updated as the office became aware of additional cases in which Wolpink was involved, or as new cases were filed.
In February 2017, Skinner's new counsel filed an amended post-conviction motion.[3] When Robert Sauls of the PAO entered his appearance, Skinner filed a motion to disqualify the entire PAO alleging Wolpink was "privy to attorney/client confidences and matters of trial strategy" because she represented him in his direct appeal. Notably, however, Skinner's motion did not claim that the PAO's screening process was insufficient or that anyone at the PAO failed to comply with the screening process with respect to Skinner's case. Relator filed a response acknowledging Wolpink had a conflict which prohibited her from participating in Skinner's case but arguing there was no basis for imputing her conflict to the entire PAO and, therefore, the motion to disqualify should be overruled.
*384 After considering the parties' arguments, Respondent sustained Skinner's motion, disqualified the entire PAO, and appointed the Missouri Attorney General's Office ("AGO") to act in its place.
A few days later, Relator filed a motion to set aside Respondent's disqualification order, and a hearing was held. Sauls was the only witness called at this hearing. He testified the screening process in place at the PAO prevented Wolpink from having contact with any individual working on a case in which she was previously involved (or any case related to such cases), including Skinner's post-conviction proceeding. After confirming he was lead counsel for the state on Skinner's case, Sauls stated he had not had contact with Wolpink regarding Skinner's case, nor did he have knowledge of any confidential information Wolpink may have learned in her capacity as Skinner's direct appeal counsel. Sauls also confirmed that, going forward under the screening process, he would have no contact with Wolpink regarding Skinner's case. Nevertheless, Respondent issued an order overruling Relator's motion to set aside.
Thereafter, Relator sought a writ of prohibition in the court of appeals, and her petition was subsequently denied. Relator then sought the same relief in this Court, and a preliminary writ was issued. On September 6, 2018, oral argument was held and this case was submitted. A few days later, Respondent filed a motion to dismiss, claiming the preliminary writ should be dismissed based on a "change of a major material fact," i.e., Wolpink was no long employed by the PAO.[4] On October 3, 2018, Respondent vacated his order disqualifying Relator from the underlying case.
Analysis
"The writ of prohibition, an extraordinary remedy, is to be used with great caution and forbearance and only in cases of extreme necessity." State ex rel. Douglas Toyota III, Inc. v. Keeter , 804 S.W.2d 750, 752 (Mo. banc 1991). "The essential function of prohibition is to correct or prevent inferior courts and agencies from acting without or in excess of their [authority or] jurisdiction." Id. As a result, departure "from the usual application of prohibition ... requires a peculiarly limited situation where some absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order." Id. at 752 (quotation marks and alteration omitted). Because Respondent's order disqualifying the elected prosecuting attorney and her entire office presents one of the uniquely limited situations in which a party will suffer "absolute irreparable harm" if writ relief is not granted, this Court's preliminary writ is now made permanent. Id.
The Court will first address Respondent's motion to dismiss. Although Respondent does not expressly claim mootness, that is, in essence, the basis on which Respondent argues this case should be dismissed. "A case is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." State ex rel. Hawley v. Heagney , 523 S.W.3d 447, 450 (Mo. banc 2017) (citation omitted). There are, however, two narrow exceptions to the mootness doctrine: (1) when a case becomes moot *385 after submission and argument, State ex rel. Donnell v. Searcy , 347 Mo. 1052, 152 S.W.2d 8, 10 (Mo. banc 1941) ; and (2) when the issue raised is one of general public interest and importance, recurring in nature, and will otherwise evade appellate review, Gurley v. Mo. Bd. of Private Investigator Examiners , 361 S.W.3d 406, 414 (Mo. banc 2012). If either of these exceptions exist, an appellate court may choose to exercise its discretion to decide the case, notwithstanding that it has become moot.
This case was rendered moot when Respondent vacated the disqualification order on October 3, 2018, because, after that date, a decision by this Court "would not have any practical effect upon any ... existing controversy." Hawley , 523 S.W.3d at 450. But Respondent did not vacate his order until after this case was argued and submitted on September 6, 2018, and, therefore, the first exception applies. As a result, this Court "will exercise its right of unlimited discretion to complete its deliberation of the case and prepare an opinion and enter a final judgment on the merits." Donnell , 152 S.W.2d at 10.[5]
Proceeding to the merits, in Lemasters, this Court set forth the framework to be applied when the disqualification of an entire prosecutor's office is sought. First, the court must determine whether a particular attorney in the office has a conflict prohibiting that attorney's participation in the underlying case. Lemasters , 456 S.W.3d at 420. The Rules of Professional Conduct aid the court in determining whether such a conflict exists. See , e.g. , Rule 4-1.7 "Conflict of Interest: Current Clients;" Rule 4-1.8 "Conflict of Interest: Prohibited Transactions;" Rule 4-1.9 "Duties to Former Clients;" and Rule 4-1.18 "Duties to Prospective Client." Second, if (and only if) such a conflict exists, the court then must determine whether that individual attorney's conflict is to be imputed to the entire office. Lemasters, 456 S.W.3d at 422. A conflict can be imputed in one of two ways: either (1) by the Rules of Professional Conduct,[6] or (2) by the appearance of impropriety test - i.e., whether "a reasonable person with knowledge of the facts would find an appearance of impropriety and doubt the fairness of the trial" to the defendant.[7] Id. at 422-23.
*386 As in Lemasters - and unlike in Gardner - there is no debate here regarding whether an individual attorney had a conflict of interest prohibiting that attorney's participation in the underlying case. Wolpink plainly had a conflict prohibiting her from participating in Skinner's case in any way.[8] Id. at 420. Accordingly, it next must be determined whether Wolpink's conflict of interest should be imputed to the entire PAO. Because the parties correctly agree Wolpink's conflict is not imputed to the entire PAO under the Rules of Professional Conduct,[9] the Court will only address whether Wolpink's conflict nevertheless should be imputed under the appearance of impropriety test.
Application of the appearance of impropriety test conclusively shows that Wolpink's conflict should not be imputed to the entire PAO. The uncontroverted evidence shows the PAO implemented a "thorough and effective screening process" as required by Lemasters . Id. at 425. Notably, neither Respondent nor Skinner took issue with the scope or implementation of the screening process, and nothing in the evidence suggests anyone in the office failed to comply. To the contrary, the evidence shows Sauls, counsel for the state in Skinner's case, and Wolpink worked on separate floors and never had a single conversation about Skinner or his case. Sauls also testified he had no knowledge of any confidential information Wolpink may have obtained during her previous representation of Skinner. As a result, "there are no facts that - if known to a reasonable person - would create an appearance of impropriety and cast doubt on the fairness of his trial" to Skinner. Id. at 424.
Despite this Court's holding in Lemasters and its application here, Respondent sustained Skinner's motion to disqualify, finding, "Wolpink owes a duty of ongoing loyalty to Movant, her former client, and that duty is inconsistent with the duties of her current office." Although Respondent correctly found Wolpink had an individual conflict (albeit for the wrong reason),[10] the order wholly failed to address whether her individual conflict should be imputed to the entire PAO.
Respondent did, however, address whether Wolpink's conflict should be imputed during the hearing on Relator's motion to set aside. During that hearing, Respondent explained the decision to disqualify *387 the entire PAO "was simply [out of] an abundance of caution." He explained he did not "see that there [was] a risk worth taking." Respondent also made clear he was not "accusing anybody of acting improperly," but, rather, he was concerned that it was "impossible to know what could happen and even though these screening practices are set up, it's impossible to say that there can't be some way in which there isn't an[ ] inadvertent disclosure, innocent as it may be, that could [a]ffect the case." In light of Lemasters , however, such vague and unsubstantiated reasons are insufficient to support disqualification of the entire PAO.[11]
Moreover, contravention of Lemasters is not the sole basis on which the Court makes its preliminary writ permanent. Here, the writ must be made permanent because - as in Gardner - Respondent's order disqualifying the entire PAO will cause Relator to suffer "absolute irreparable harm" absent intervention by this Court. Douglas Toyota III, Inc. , 804 S.W.2d at 752.[12] The harm caused by Respondent's order is two-fold. As an initial matter, Respondent's order prevented Relator from exercising her statutorily authorized duties as the elected prosecuting attorney of Jackson County. And, in our legal system, this is no small intrusion.
The unparalleled authority of the American prosecutor has often been attributed to the fact that district attorneys in the United States are elected, county-level officials. Prosecutorial power, in this view, is an outgrowth of the peculiar emphasis the United States places on local, democratic control. The "locally elected status" of American prosecuting attorneys provides them with an "independent source of power" and is the reason they enjoy "discretionary privilege unmatched in the world."
David Alan Sklansky, The Nature and Function of Prosecutorial Power , 106 J. Crim. L. & Criminology 473, 491 (2016) (footnotes omitted).
Therefore, by disqualifying Relator, Respondent infringed upon Relator's ability to carry out her duties as "a public officer." State ex rel. Griffin v. Smith , 363 Mo. 1235, 258 S.W.2d 590, 593 (Mo. banc 1953), overruled on other grounds by State v. Honeycutt , 96 S.W.3d 85 (Mo. banc 2003).
The harm, however, does not stop at Relator. Respondent's order also affects the people of Jackson County. By virtue of her position as an elected prosecuting attorney, *388 most, if not all, of Relator's duties "involve a good faith exercise of the sound discretion." State on inf. McKittrick v. Wallach, 353 Mo. 312, 182 S.W.2d 313, 319 (Mo. banc 1944). At every turn, she must "choose a course of action or non-action." Id. As a result, the people of Jackson County believed that Relator, once elected, would exercise her discretion "to the dictates of [her] own judgment and conscience uncontrolled by the judgment and conscience of any other person." Id. In essence, by electing Relator, the people of Jackson County decided Relator's decision-making skills - i.e., her discretion - best represent their interests. By disqualifying Relator and appointing the AGO, Respondent's order unjustifiably circumvents the voters' choice to have their interests represented by Relator in Skinner's case as in any other.
Due to the irreparable harm caused when an entire prosecuting attorney's office is disqualified, a circuit court should not do so absent a finding of an actual conflict of interest that must be imputed to the entire office under either the Rules of Professional Conduct or the appearance of impropriety test. Lemasters , 456 S.W.3d at 422-23. As a result, in most - but certainly not all - cases, a thorough and effective screening process (such as the ones used by the PAO here or the Newton County Prosecuting Attorney's office in Lemasters ) will be sufficient. See id. at 424-25.
To be clear, the Court does not hold a screening process will always be sufficient to dispel an appearance of impropriety. Id. at 425. For instance, as this Court explained in Lemasters , "when it is the prosecutor herself, i.e., 'the boss,' who supposedly is being screened from the remainder of her employees, rather than one assistant being screened from the others" even a "thorough and effective screening process" may not be sufficient to remove the appearance of impropriety. Id. (citing State ex rel. Burns v. Richards, 248 S.W.3d 603, 605 (Mo. banc 2008) ).[13] Furthermore, when this issue is considered on appeal, the "trial court's ruling on a motion to disqualify is reviewed for abuse of discretion." Id. at 420. Accordingly, a situation may arise in which there is very little (yet sufficient) evidence to support the satisfaction of the appearance of impropriety test. Then, under the standard of review, an appellate court would be required to defer to the circuit court. Id. Neither of these situations is present here.
In short, only in rare circumstances should a circuit court interfere with the democratic process and override the voters' choice as to who is best suited to represent the interests of the people as prosecuting attorney, even with respect to a single case. Unless there is an individual attorney with a conflict of interest that prevents his or her participation in the case, and that attorney's conflict must be imputed to the entire office either under the Rules of Professional Conduct or because *389 "a reasonable person with knowledge of the facts would find an appearance of impropriety and doubt the fairness of the trial" to the defendant, id. at 423, circuit courts should not interfere with the elected prosecuting attorney's statutorily authorized duty to represent the interests of the public by ordering an unnecessary, office-wide disqualification. Griffin , 258 S.W.2d at 593.
Conclusion
For the reasons set forth above, this Court's preliminary writ of prohibition is made permanent.
All concur.

Skinner was convicted of unlawful use of a weapon and armed criminal action. He was sentenced concurrently for a total prison term of 18 years.

Before his direct appeal had concluded, Skinner filed a premature pro se motion for post-conviction relief in July 2014. See Rule 29.15(b) ("If an appeal of the judgment ... is taken, the motion shall be filed within 90 days after the date the mandate of the appellate court issues affirming such judgment or sentence."). Accordingly, the circuit court stayed Skinner's post-conviction proceeding and suspended the due date of Skinner's amended motion until 90 days after the mandate issued on his direct appeal. Because Skinner's premature filing of the pro se motion, and the circuit court's subsequent staying of the underlying proceedings, are not at issue in this writ proceeding, the procedure of the underlying case will not be addressed further.

Skinner's amended post-conviction motion did not include any claims against Wolpink but stated she may be called as a witness.

In its motion to dismiss, Respondent informed the Court Wolpink provided the PAO with official notice of her termination on September 7, 2018, and indicated her last day of employment would be Friday, September 28, 2018.

It also appears the second exception, known as the "public interest" exception, applies here. Gurley , 361 S.W.3d at 414. First, as explained below, the people of Jackson County will be harmed if the individual elected to serve as their prosecuting attorney is not allowed to fulfill her statutorily authorized duty of representing the interests of the public in this case. This, of course, is an issue of significant public interest and importance. Second, this situation is likely to continue to recur as it is common for attorneys to transition between prosecutors' offices and the public defender system. For evidence of the frequency of this problem, see Lemasters , 456 S.W.3d 416, which this Court decided in 2015 and presents an almost identical issue. And third, this case is capable of evading review if a circuit court vacates its order disqualifying the entire prosecuting attorney's office prior to the resolution of the case in an appellate court, which would render any decision by the higher court meaningless. A circuit court might be prompted to do so if, like here, the conflicted attorney leaves the (wrongly) disqualified office.

See , e.g. , Rule 4-1.10 "Imputation of Conflicts of Interest: General Rule;" and Rule 4-1.11 "Special Conflicts of Interest for Former and Current Government Officers and Employees."

In Gardner , 561 S.W.3d. at 396-97, this Court explained, the "appearance of impropriety test ... arises from a criminal defendant's constitutional right to a fair trial," and "the key to the appearance of impropriety test is whether a reasonable person with knowledge of the facts would find an appearance of impropriety and doubt the fairness of the trial to the defendant in the case ." (Quotation marks omitted.)

Because, under Rule 4-1.11(a), Wolpink is "a lawyer who has formerly served as a public officer or employee of the government," Rule 4-1.11(a)(2) prohibited her participation in the state's representation in Skinner's post-conviction case because such proceedings were "in connection with a matter in which [Wolpink] participated personally and substantially," i.e., Skinner's direct appeal. Likewise, Wolpink was required to comply with Rule 4-1.9(c), which prohibited her "(except in circumstances not pertinent here) from revealing any information relating to her representation of [Skinner] or using such information to his disadvantage." Lemasters , 456 S.W.3d at 420 (citing Rule 4-1.9(c) ). The uncontroverted evidence shows Wolpink complied with her obligations under Rules 4-1.11(a)(2) and 4-1.9(c).

Because Wolpink is both a former and a current public officer or employee, the relevant rule to consult is Rule 4-1.11(b). Lemasters , 456 S.W.3d at 421. Rule 4-1.11(b) provides, because Wolpink was prohibited from participating in the state's representation in Skinner's post-conviction case under Rule 4-1.11(a), "no lawyer in a firm with which [Wolpink] is associated may knowingly undertake or continue representation in such a matter." [Emphasis added.] But, as this Court explained in Lemasters , the PAO is not a "firm" and, as a result, Wolpink's conflict is not imputed to the PAO under Rule 4-1.11(b). Lemasters, 456 S.W.3d at 421.

Wolpink's conflict was not due to her "ongoing duty of loyalty," but rather, as explained above in note 8, under Rule 4-1.11(a)(2).

In his order disqualifying the entire PAO, Respondent relied on section 56.110, RSMo 2016, which provides, "If the prosecuting attorney and assistant prosecuting attorney be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his or her office, ... the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause." § 56.110 RSMo 2016. At most, section 56.110 gives Respondent the authority to disqualify Wolpink due to her individual conflict because section 56.110 plainly refers to a personal (as opposed to an imputed, office-wide) conflict. Section 56.110 makes no mention of the situation present here, i.e., whether Wolpink's conflict should be imputed to the entire PAO. Moreover, under no circumstances does the authority conferred by section 56.110 permit Respondent to not follow this Court's decision in Lemasters with the resulting irreparable harm discussed below.

This Court does not believe Respondent intended to cause such harm. Indeed, it appears Respondent did not believe there was any harm at all. At the hearing on Relator's motion to reconsider, Respondent asked Relator, "What's the big deal? Why are you guys [ (i.e., Relator) ] so adamant about who represents the State on this case?" But whether Respondent recognized it, the harm caused by his order is both substantial and irreparable.

Another example in which the appearance of impropriety test was satisfied is State v. Ross , 829 S.W.2d 948 (Mo. banc 1992). "In Ross, a part-time assistant prosecutor brought criminal assault charges against Ross even though another lawyer in the assistant prosecutor's law firm (who also was a part-time prosecutor) was already representing Ross in a civil action arising out of the same assault." Lemasters , 456 S.W.3d at 423 (citing Ross , 829 S.W.2d at 949-50 ). The Court in Ross explained there was evidence that showed "members of the prosecuting attorney's office had the potential access" to confidential information from Ross's civil case. Ross , 829 S.W.2d at 951. Additionally, there was "no evidence of steps taken to insulate the actual prosecutor from the conflict," i.e., there was no evidence a thorough and effective screening process was in place. Id. at 952 (emphasis added).