Paul C. Wilson, Judge
This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, § 4.1. Relator, City of St. Louis Circuit Attorney Kimberly Gardner ("Relator"), seeks a writ of prohibition barring Respondent, Judge Timothy J. Boyer ("Respondent"), from enforcing his order disqualifying the entire City of St. Louis Circuit Attorney's Office ("CAO") in the underlying case. As in State ex rel. Peters-Baker v. Round , --- S.W.3d. ----, 2018 WL 6320826 (Mo. banc 2018) (No. SC96931), also handed down this date, Respondent's order fails to comply with this Court's holding in State v. Lemasters , 456 S.W.3d 416 (Mo. banc 2015), and will cause irreparable harm if relief is not granted. Accordingly, this Court's preliminary writ of prohibition is now made permanent.
Background
In the underlying case, the defendant, Wendell Davis, is charged as a prior offender with unlawful use of a weapon, unlawful possession of a weapon, stealing a *393 firearm, resisting arrest, and tampering with a motor vehicle. The probable cause statement filed with the complaint indicates Officer A.F. resorted to the use of deadly force to apprehend Davis.[1] As a result, Officer A.F. was both a witness and a victim to the unlawful use of a weapon charge and the resisting arrest charge. When a prosecution involves the use of force by a victim (including police officer victims, such as Officer A.F.), it is Relator's policy to conduct an independent investigation of the victim's use of force.[2] The goal of Relator's investigation is to determine whether the victim was justified in using force and whether criminal charges should be filed against the victim. Sometime prior to January 2018, in accordance with this policy, Relator initiated an investigation into Officer A.F's use of force against Davis.
Prior to Davis's preliminary hearing, counsel for Officer A.F. filed a motion to disqualify the CAO.[3] In the motion, Officer A.F. argued Relator's independent investigation created an appearance of impropriety that would prejudice Officer A.F. unfairly. Officer A.F. claimed an appearance of impropriety existed because, through Officer A.F.'s contacts with the CAO as a witness, the CAO might become privy to information that could be used against Officer A.F. in the criminal investigation of his conduct. In short, Officer A.F. asserted, when the CAO elects to independently investigate police shootings, it ought to be disqualified from simultaneously prosecuting the underlying criminal case. Both Relator and Davis filed a motion to strike Officer A.F.'s motion to disqualify.
Following a hearing on these motions, Respondent entered an order disqualifying the CAO from prosecuting Davis's case.[4] Respondent first noted the court had the "inherent authority to supervise and regulate the conduct of attorneys who appear before it," which, Respondent claimed, included "the authority to disqualify counsel." On the merits, Respondent reasoned "a potential conflict of interest may arise when, during the prosecution of a specific criminal defendant, the prosecutor has motives or interests other than according the defendant in a pending case procedural justice." Respondent found Relator had not "engaged in any misconduct" and, instead, concluded there was an "appearance of impropriety" because the CAO was "actively prosecuting the defendant while simultaneously reviewing the conduct of the *394 very officer upon whom [it was] relying to effectuate such prosecution."
Relator sought a writ of prohibition in the court of appeals, and her petition was denied. Relator then sought the same relief in this Court, and a preliminary writ was issued.[5] Prior to oral argument in this case, Relator informed the Court the review of Officer A.F.'s conduct had been completed and Relator had no intention of bringing charges against Officer A.F. regarding his use of force against Davis. In response, Respondent confirmed Officer A.F. was aware the investigation had been completed and that he would not be charged criminally. A few days later, on September 6, 2018, oral argument was held and this case was submitted. It was not until September 18, 2018, however, that Respondent vacated his order disqualifying the CAO from Davis's prosecution.[6]
Analysis
"The writ of prohibition, an extraordinary remedy, is to be used with great caution and forbearance and only in cases of extreme necessity." State ex rel. Douglas Toyota III, Inc. v. Keeter , 804 S.W.2d 750, 752 (Mo. banc 1991). "The essential function of prohibition is to correct or prevent inferior courts and agencies from acting without or in excess of their [authority or] jurisdiction." Id. As a result, departure "from the usual application of prohibition ... requires a peculiarly limited situation where some absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order." Id. (quotation marks and alteration omitted). Because Respondent's order wrongfully disqualifying the elected prosecutor and her entire office presents one of the uniquely limited situations in which a party will suffer "absolute irreparable harm" if writ relief is not granted, this Court's preliminary writ is made permanent. Id.
Although no motion to dismiss has been filed, the Court, as an initial matter, will address the issue of mootness. "A case is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." State ex rel. Hawley v. Heagney , 523 S.W.3d 447, 450 (Mo. banc 2017) (citation omitted). "There are, however, two narrow exceptions to the mootness doctrine: (1) when a case becomes moot after submission and argument; and (2) when the issue raised is one of general public interest and importance, recurring in nature, and will otherwise evade appellate review." Peters-Baker , 561 S.W.3d. at 384-85 (citation omitted). "If either of these exceptions exist, an appellate court may choose to exercise its discretion to decide the case, notwithstanding that it has become moot." Id. at 385.
This case was rendered moot when Respondent vacated the disqualification order on September 18, 2018, because, after that date, "a decision by this Court 'would not have any practical effect upon *395 any ... existing controversy.' " Id. at 385 (citing Hawley , 523 S.W.3d at 450 ). But, as in Peters-Bake r, Respondent in this case did not vacate his order until after the case was argued and submitted on September 6, 2018. Therefore, the first exception applies. As a result, this Court "will exercise its right of unlimited discretion to complete its deliberation of the case and prepare an opinion and enter a final judgment on the merits." Id. (citing State ex rel. Donnell v. Searcy , 347 Mo. 1052, 152 S.W.2d 8, 10 (Mo. banc 1941) ).[7]
Regarding the merits of Relator's petition, Peters-Baker addresses the question of whether and when an entire prosecutor's office may be disqualified. There, the Court stated:
[I]n Lemasters , this Court set forth the framework to be applied when the disqualification of an entire prosecutor's office is sought. First, the court must determine whether a particular attorney in the office has a conflict prohibiting that attorney's participation in the underlying case. Lemasters , 456 S.W.3d at 420. The Rules of Professional Conduct aid the court in determining whether such a conflict exists. See , e.g. , Rule 4-1.7 "Conflict of Interest: Current Clients;" Rule 4-1.8 "Conflict of Interest: Prohibited Transactions;" Rule 4-1.9 "Duties to Former Clients;" and Rule 4-1.18 "Duties to Prospective Client." Second, if (and only if) such a conflict exists, the court then must determine whether that individual attorney's conflict is to be imputed to the entire office. Lemasters, 456 S.W.3d at 422. A conflict can be imputed in one of two ways: either (1) by the Rules of Professional Conduct, or (2) by the appearance of impropriety test - i.e., whether "a reasonable person with knowledge of the facts would find an appearance of impropriety and doubt the fairness of the trial" to the defendant. Id. at 422-23.
Peters-Baker , 561 S.W.3d. at 385 (footnotes omitted).
Problematically, here - and unlike in Lemasters and Peters-Baker - there is no finding (or even an allegation) that any particular attorney employed by the CAO had a conflict prohibiting that attorney's participation in Davis's case. In fact, Davis does not seek disqualification of Relator or the CAO. Respondent found Relator had not "engaged in any misconduct" and acted to disqualify the CAO only because a "potential conflict of interest" existed.[8] Absent *396 the existence of an individual conflict, however, a court need not proceed to determine whether that conflict should be imputed to the entire CAO, either under the Rules of Professional Conduct or the appearance of impropriety test set forth in Lemasters and applied in Peters-Baker .
Under the framework of Lemasters , Respondent should have ceased the analysis when he was unable to identify any individual attorney at the CAO with an actual conflict of interest. Instead, Respondent continued the analysis first by explaining "the prosecuting attorney must avoid even the appearance of impropriety"[9] and then finding such an "appearance of impropriety" existed because the CAO was "actively prosecuting the defendant while simultaneously reviewing the conduct of the very officer upon whom [it is] relying to effectuate such prosecution." The conduct Respondent identified, however, does not constitute an appearance of impropriety as that phrase is generally understood in this context.
The phrase "appearance of impropriety," as it is used in the disqualification context, was recently addressed by this Court in Lemasters . There, this Court recognized an individual attorney's actual conflict of interest may be imputed not only under the Rules of Professional Conduct but also pursuant to the defendant's "constitutional right to a fair trial." Lemasters , 456 S.W.3d at 422 (concluding "even if office-wide disqualification is not required by [the Rules of Professional Conduct], it nevertheless is necessary if failure to disqualify the entire prosecutor's office creates an appearance of impropriety and casts doubt on the fairness of the trial" to the defendant). See also State v. Ross , 829 S.W.2d 948 (Mo. banc 1992). The appearance of impropriety test, therefore, arises from the criminal defendant's constitutional right to a fair trial. Lemasters , 456 S.W.3d at 422 (citing In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.") ). And it is, of course, the circuit court's duty to ensure the defendant receives a fair trial. State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, 526 (Mo. banc 1947).[10] Accordingly, the key to the appearance of impropriety test is whether "a reasonable person with knowledge of the facts would find an *397 appearance of impropriety and doubt the fairness of the trial" to the defendant in the case . Lemasters , 456 S.W.3d at 423.[11]
All considerations of fairness by the circuit court must, therefore, be made through the lens of fairness to the defendant, not third parties. The circuit court does not have the authority to ensure every action taken anywhere in the CAO is done in accordance with its general notions of fairness. It is the fairness of Davis's trial with which the circuit court must be concerned. It is correct to say a circuit court has the "inherent authority to supervise and regulate the conduct of attorneys who appear before it," but that authority extends only so far as necessary to protect the defendant's right to a fair trial, particularly in the criminal context.[12]
This Court has long held that circuit courts have the authority to disqualify an attorney when a conflict of interest (such as those provided for in the Rules of Professional Conduct) exists with respect to counsel for one of the parties to the case. State v. Jones , 306 Mo. 437, 268 S.W. 83, 85 (1924) ("The trial court had inherent power, independent of the statute, to appoint a special prosecuting attorney for the state when the prosecuting attorney, for any reason, was disqualified."). Circuit courts also have the authority to disqualify an entire prosecutor's office when an individual prosecutor's conflict of interest (which prohibits that attorney's participation in the case) must be imputed to the entire office under the Rules of Professional Conduct or under the appearance of impropriety test. Lemasters , 456 S.W.3d at 422. Therefore, Respondent was correct to the extent he believed he had inherent authority to disqualify counsel. But Respondent was incorrect to the extent he failed to recognize the limitations placed on that authority by the meanings typically given to the phrases "conflict of interest" and "appearance of impropriety" in the context of disqualification.
In addition to the foregoing flaw in Respondent's analysis, this Court is compelled to issue an extraordinary writ in this case because Relator will suffer "absolute irreparable harm" absent intervention by this Court. Douglas Toyota III, Inc. , 804 S.W.2d at 752. As explained in Peters-Baker , the "harm caused by Respondent's *398 order is two-fold." Peters-Baker , 561 S.W.3d. at 387. As an initial matter, Respondent's order prevents Relator and her office from exercising Relator's statutorily authorized duties in this case as the elected circuit attorney of the City of St. Louis. Under Rule 4-3.8, Relator has an obligation to "refrain from prosecuting a charge [she] knows is not supported by probable cause." Such an obligation "necessarily requires that [s]he investigate, i.e., inquire into the matter with care and accuracy, that in each case [s]he examine the available evidence, the law and the facts, and the applicability of each to the other." State on inf. McKittrick v. Wallach , 353 Mo. 312, 182 S.W.2d 313, 318-19 (Mo. banc 1944).
Further, Relator "is not a mere lackey of the court nor are [her] conclusions in the discharge of [her] official duties and responsibilities, in anywise subservient to the views of the judge as to the handling of the State's case." State ex rel. Griffin v. Smith , 363 Mo. 1235, 258 S.W.2d 590, 593 (Mo. banc 1953), overruled on other grounds by State v. Honeycutt , 96 S.W.3d 85 (Mo. banc 2003). Accordingly, the fact Respondent believed the simultaneous prosecution of Davis's case and investigation of Officer A.F.'s conduct should have been conducted in a different manner is irrelevant. Rather, Relator has been elected to exercise her discretion "to the dictates of [her] own judgment and conscience uncontrolled by the judgment and conscience of any other person[,]" including Respondent. McKittrick , 353 Mo. 312, 182 S.W.2d 313 at 319. Relator holds one of the most powerful positions in our legal system, and Respondent cannot control the way Relator chooses to exercise the broad, almost unfettered, discretion conferred upon her by statute.
The unparalleled authority of the American prosecutor has often been attributed to the fact that district attorneys in the United States are elected, county-level officials. Prosecutorial power, in this view, is an outgrowth of the peculiar emphasis the United States places on local, democratic control. The "locally elected status" of American prosecuting attorneys provides them with an "independent source of power" and is the reason they enjoy "discretionary privilege unmatched in the world."
David Alan Sklansky, The Nature and Function of Prosecutorial Power , 106 J. Crim. L. & Criminology 473, 491 (2016) (footnotes omitted).
But the "harm ... does not stop at Relator." Peters-Baker , 561 S.W.3d. at 387. Respondent's order also affects the people of the City of St. Louis, who, by electing Relator as their circuit attorney, "decided Relator's decision-making skills - i.e., her discretion - best represent their interests." Id. at 388. Therefore, by disqualifying Relator, Respondent's order "unjustifiably circumvents the voters' choice to have their interests represented by Relator in [Davis's] case as in any other." Id.
In short, only in rare circumstances should a circuit court interfere with the democratic process and override the voters' choice as to who is best suited to represent the interests of the people as prosecuting attorney.... Unless there is an individual attorney with a conflict of interest [ (as that term is generally understood in this context) ] that prevents his or her participation in the case, and that attorney's conflict must be imputed to the entire office either under the Rules of Professional Conduct or because "a reasonable person with knowledge of the facts would find an appearance of impropriety and doubt the fairness of the trial" to the defendant , [Lemasters , 456 S.W.3d] at 423, circuit *399 courts should not interfere with the elected prosecuting attorney's statutorily authorized duty to represent the interests of the public by ordering an unnecessary, office-wide disqualification. Griffin , 258 S.W.2d at 593.
Id. at 388-89 [emphasis added]. As in Peters-Baker , Respondent's order unnecessarily interferes with Relator's duty to represent the interests of the public.
Conclusion
For the reasons set forth above, this Court's preliminary writ of prohibition is made permanent.
All concur.

On the night in question, according to the probable cause statement, Officer A.F. noticed a truck (in which Davis was the passenger) with a license plate from a stolen vehicle. When Officer A.F. activated his lights and siren, the driver of the truck drove off recklessly. The truck later came to a stop, and the two occupants ran off on foot. Officer A.F. pursued Davis, who eventually stopped running and hid behind a car. At that point, Officer A.F. drew his gun and ordered Davis to get on the ground. Davis did not comply. Instead, Davis patted his leg as though he was sliding something down the leg of his pants. Davis then retrieved a gun from the ankle area of his pants and pointed it at Officer A.F. In response, Officer A.F. fired a shot, which struck Davis in the back. Davis was paralyzed as a result of the shooting.

The review and investigation of the victim's use of force is not conducted by trial attorneys who are prosecuting the defendant's case but, rather, by members of the "public integrity" section of the CAO.

The circuit court permitted Counsel for Officer A.F. to enter a limited appearance in the underlying case.

Respondent's order states he was acting sua sponte and was not sustaining Officer A.F.'s motion. Accordingly, the Court need not address Relator's argument that Officer A.F. lacked standing to seek Relator's disqualification.

Shortly thereafter, this Court also granted Davis's motion to intervene.

Although a motion to dismiss has not been filed, the parties have, in letters filed with the Court, addressed the issue of whether this case is moot. Relator, on the one hand, asserts, despite the conclusion of the investigation against Officer A.F., this case should not be dismissed as moot because this is an issue of public importance and likely to recur. Respondent, on the other hand, argues that, once the order was entered below vacating Respondent's disqualification order, there is nothing left for this Court to decide and the case should be dismissed as moot.

"It also appears the second exception, known as the 'public interest' exception, applies here." Peters-Baker , 561 S.W.3d. at 385 n.5. "First, as explained below, the people of [the City of St. Louis] will be harmed if the individual elected to serve as their prosecuting attorney is not allowed to fulfill her statutorily authorized duty of representing the interests of the public...." Id. This is an issue of significant public interest and importance. Further, this case involves the interplay between local police agencies and the local prosecuting attorney, an issue that is also of public importance. Second, this situation - i.e., a prosecution in which a police officer is an essential witness and also used force in apprehending the defendant - is almost certain to recur. For examples of recent cases with similar facts, see State v. Wolford , No. 1522-CR02859-01 (Cir. Court City of St. Louis); State v. Clerk , No. 1622-CR03791-01 (Cir. Court City of St. Louis); State v. Polk , No. 1722-CR03688 (Cir. Court City of St. Louis). Third, as with Peters-Baker , "this case is capable of evading review if a circuit court vacates its order disqualifying the entire prosecuting attorney's office prior to the resolution of the case in an appellate court, which would render any decision by the higher court meaningless."Peters-Baker , 561 S.W.3d. at 385 n.5. A circuit court might be prompted to do so if, like here, the prosecuting attorney concludes the investigation against the officer and determines no charges will be brought.

It is unclear what Rule of Professional Conduct Respondent believed could have been violated. Respondent does not identify any rule on the verge of violation, and a review of the rules by this Court reveals no likely candidates. It seems as though Respondent used the phrase "conflict of interest" in an imprecise manner to refer to what Respondent might view as undesirable behavior in the underlying investigation. That is not, however, how the phrase "conflict of interest" has been used in the disqualification context.

As support for this statement, Respondent relied on comment 1 to Rule 4-3.8, which provides, in relevant part, "[a] prosecutor has the responsibility of a minister of justice.... to see that the defendant is accorded procedural justice ...;" and State v. Boyd , 560 S.W.2d 296, 297 (Mo. App. 1977), which states prosecuting attorneys have a duty to assure a defendant receives a fair trial, which requires the prosecuting attorney to avoid impropriety (as well as the appearance of impropriety). Respondent, however, overlooks the focus both statements place on the defendant's right to a fair trial because, significantly, neither Rule 4-3.8 nor Boyd is concerned with a general appearance of impropriety unconnected to that right. Rather, both statements are specifically concerned with fairness and procedural justice with respect to the defendant. In this case, Davis has claimed no injury to his right to a fair trial, and the Court perceives no such injury.

While Lemasters holds the appearance of impropriety is not judged "only from the defendant's perspective" but also from the perspective of "a reasonable person with knowledge of the facts," this shift in perspective does not change the relevant inquiry - i.e., whether there is "an appearance of impropriety [that] casts doubt on the fairness of the trial" to the defendant . Lemasters , 456 S.W.3d at 422-23.

Although it is unnecessary even to reach the appearance of impropriety test (because no underlying individual conflict exists), a proper application of the test reveals absolutely no appearance of impropriety in this case. This is best evidenced by Davis's role in this writ proceeding, i.e., he has intervened and joined the position of Relator requesting this Court issue a writ prohibiting Respondent from disqualifying the CAO. Furthermore, in his brief, Respondent asserts at least six reasons purportedly giving rise to an appearance of impropriety in the underlying case; significantly, however, none of these purported reasons have anything to do with Davis or any unfairness he may suffer. Accordingly, "a reasonable person with knowledge of the facts would [not] find an appearance of impropriety" casting doubt on the fairness of the trial to Davis. Lemasters , 456 S.W.3d at 422-23.

Respondent relies on State ex rel. Horn v. Ray , 325 S.W.3d 500 (Mo. App. 2010), as authority for extending the circuit court's authority to all actions of the CAO. Horn provides no such support. Specifically, Respondent fails to recognize the "inherent authority" referenced in Horn is not limitless; rather, it only permits disqualification of an attorney when a conflict of interest (as that phrase is normally understood in this context) exists. Indeed, in Horn , the court of appeals found the attorney's "dual representation violate[d] Rule 4-1.7 of the Rules of Professional Conduct," id. at 505, and therefore, entered a permanent writ prohibiting the circuit court from denying the state's motion to disqualify counsel. Id. at 513.