

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| Respondent, | ) |
| | ) |
| v. | ) WD86007 |
| | ) OPINION FILED: |
| CHRISTOPHER MICHAEL | ) JULY 30, 2024 |
| PATRICK MOORE, | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Daniel Green, Judge**

**Before Division One: Lisa White Hardwick, Presiding Judge, Alok Ahuja, Judge,**
**Anthony Rex Gabbert, Judge**

Christopher Michael Patrick Moore appeals the circuit court's Judgment, entered on a jury verdict, convicting him of committing violence against an employee of the Department of Corrections ("DOC") pursuant to Section 217.385,[1] assault in the first degree, pursuant to Section 565.050, and two counts of armed criminal action, pursuant to Section 571.015. On appeal, Moore contends the circuit court abused its discretion in striking and overruling Moore's request for disqualification of assistant prosecuting attorney, E.G., and the Cole County Prosecutor's Office ("CCPO"), in violation of his

---

[1] All statutory references are to the Revised Statutes of Missouri, as updated through 2018, unless otherwise noted. All rule references are to the Missouri Court Rules, as updated through 2020, unless otherwise noted.

rights to due process and a fair trial. Moore argues that E.G. twice represented Moore as a public defender with the Missouri State Public Defender's Office ("MSPD"), and thereafter represented the State[2] in the case against Moore, creating an apparent conflict of interest and an appearance of impropriety, which was not waived by Moore, and a presumption of prejudice that was not rebutted. We reverse and remand.

## Background and Procedural Information

Moore does not challenge the sufficiency of the evidence to support his convictions. In brief, on July 9, 2019, Moore was indicted for committing violence against an employee of the DOC. Moore, a prison inmate, was allegedly being escorted from the shower by a DOC employee when Moore slashed the employee twice in the face with a sharp object, and punched the employee in the neck before being subdued by responding officers. (An amended information was later filed which added assault in the first degree and two counts of armed criminal action to Moore's charges.) A jury convicted Moore of all charges, and the circuit court sentenced Moore to thirty-five years in prison.

This appeal regards the circuit court striking Moore's motion to disqualify E.G. and the CCPO from his case, and thereafter denying Moore's continuing objection to E.G. and the CCPO's involvement in his prosecution.

---

[2] The "State" and "CCPO" are used interchangeably herein.

2

On August 5, 2019, Moore applied to the Missouri State Public Defender System for representation after being indicted for committing violence against an employee of the DOC. On August 28, 2019, an attorney for the MSPD entered Moore's case. E.G. was not Moore's attorney of record, but on July 13, 2021, and October 12, 2021, E.G. appeared at scheduled hearings on Moore's behalf. On October 18, 2021 (less than a week after last appearing on Moore's behalf as a public defender), E.G. began working for the CCPO. Thereafter, E.G. began assisting S.F., another assistant prosecutor, with the State's case against Moore. Moore was unaware of this until approximately four business days prior to his scheduled trial when Moore's defense counsel overheard E.G. state at an unrelated court matter that he was assisting S.F. with the case.

On Thursday, August 25, 2022, Moore filed a "Motion to Disqualify the Office of the Cole County Prosecuting Attorney and for Order Appointing Substitute," citing Rule 4-1.9(b) and Section 56.110. Moore simultaneously filed a "Motion for Continuance," asking that his jury trial scheduled to begin April 29, 2022, be continued so that defense counsel could investigate, prepare for, and have an evidentiary hearing on the motion to disqualify.[3]

The motion to disqualify alleged that E.G. had appeared with Moore on behalf of the MSPD on July 13, 2021, and October 12, 2021, and then began working for the CCPO on October 18, 2021. E.G. had access to, and was forwarding emails from, his

---

[3] A pre-trial hearing was already scheduled for August 26, 2022, at 1:30 p.m., and Moore noticed his motions up to be heard at that time.

MSPD email account until October 19, 2021. The MSPD grants general access to files of all clients within an office to all public defenders working therein, and the public defenders regularly discuss client affairs with other attorneys in the office. Until his resignation on October 15, 2021, E.G. had unrestricted access to client files and freely discussed client affairs with other attorneys in the MSPD District 19 office. On August 23, 2022, E.G. made a comment during the Division 1 docket day that he was assisting attorney S.F. prepare for his August 29, 2022, jury trial. Moore's defense counsel clarified that the case E.G. was assisting with regarded charges of committing violence against a correctional officer.

The CCPO responded to Moore's motion to disqualify with "State's Motion to Strike or in the Alternative, Opposition to Defendant's Motion to Disqualify," asking the court to strike Moore's motion, or in the alternative, deny the motion pursuant to "Rule 55.27(e), Section 56.110, and Rule(s) 4-1.6 and 4-1.9." The CCPO alleged that, as a public defender, E.G. "had no participation in the case captioned above on behalf of the defendant other than simple video docket appearances." The CCPO quoted Comment [5] to Rule 4-1.9(b) which discusses that Rule 4-1.9(b) operates to disqualify a lawyer only when the lawyer has actual knowledge of protected information. The CCPO argued that Moore's motion was "speculative and deficient" and failed upon its face because it had "no facts averring that former public defender [E.G.] had acquired information which would be a detriment to the defendant." Further, that the court had a caretaking obligation to ensure matters before it had "sufficient factual pleadings and sufficient legal

4

gravity to be litigated," asking that under Rule 55.27(e), the court "strike defendant's motion to disqualify [E.G.] as insufficiently plead as to merit this Court's consideration."[4]

At the Friday, August 26, 2022, pre-trial hearing, Moore's defense counsel asked for an evidentiary hearing on his motion to disqualify, arguing that more investigation needed to be done as far as E.G.'s involvement in the case, and "other individuals that I would like to speak with in regards to the comments made by [E.G.] on Tuesday." The court asked if the defense would be ready to take the matter up Monday. Counsel responded that the inquiry could not be accomplished that quickly, as counsel wanted to make sure the investigation into E.G.'s involvement in the prosecutor's case versus his involvement with the MSPD's case was thoroughly investigated to preserve Moore's rights as much as possible.

The CCPO objected to "any continuance for an investigation that is unlikely to proceed with any facts that will have any bearing on this issue," and argued that there could be no investigation into E.G. with regard to his duties at the CCPO "that would not be privileged and so such investigation can't occur because it would be non-discoverable to the opposing party."

The following colloquy occurred between the court and defense counsel:

> THE COURT: …I mean, we brought Mr. Moore up here from Bonne Terre in hopes that we could resolve his cases. So that's kind of my primary thing. I'm not having anything to

---

[4] The CCPO's motion did not allege that E.G. had *not* acquired protected information regarding Moore while employed by the MSPD, only that Moore's motion failed to present facts showing that E.G. had acquired such knowledge.

5

do Monday morning.  I mean, I was planning on doing this trial, so if you would like to –

[DEFENSE]:  And, your Honor, we were as well, but this information just came to light on Tuesday by an offhanded comment.  I was not expecting such a comment to be made, which led me to discuss with my superiors in my office that this was something that needed to be investigated.

THE COURT:  Yeah, well, let me counsel everybody on this, throwing something up against the wall and seeing what sticks is not any way to try a lawsuit.  And throwing ethical accusations against people up against the wall and seeing what sticks is not going to be allowed in this court.  Now, I will let you do what you want Monday morning at nine o'clock, but I would counsel you to be very careful about what accusations you make against officers of this court because that has a tendency to come around and not end well for the false accuser if the accusation is false.

[DEFENSE]:  And with all due respect, your Honor, I completely understand the ethics of my position, as well as other officers of this court, which is why it is imperative that I bring it to this court's attention to not only preserve the ethics within this court and this courtroom and this position, my client's rights as well.

THE COURT:  Well, preservation of appeal is one thing, but doing everything you can no matter how outlandish, is another, but we'll see which way it goes.  We'll meet again at nine o'clock and you can give me an update on what's going on.

At the August 29, 2022, hearing, defense counsel testified to overhearing E.G. discuss that he was assisting with the prosecution of Moore's case.  Assistant prosecuting attorney S.F. then stipulated that E.G. had been assisting with the case.  Thereafter, the

6

court took judicial notice of docket entries in Moore's case which reflected that E.G. had appeared twice on Moore's behalf while working as a public defender with the MSPD. Moore's defense counsel testified that, when E.G. worked for the MSPD, Moore's case was an "open case."

The CCPO offered no evidence. The following colloquy occurred during argument on Moore's motion to disqualify and the CCPO's motion to strike:

> THE COURT: Well, it seems to me that the defendant's position is, is that the appearance itself is disqualifying, and the prosecutor's position is, is that there has to be actual knowledge. What's your best case, [Defense Counsel]?

> [DEFENSE]: I would just point to the rules, your Honor. I think both sides have a duty to screen their cases and to adequately ensure that there is no conflict of interest. The prosecutors do have a higher burden in that they have to look and see whether there is the appearance of impropriety. And I would argue that the appearance of [E.G.] as a defense – as a member of the defense on behalf of Mr. Moore, and following that up by appearing to assist the state in trial preparation on the same underlying case, is an appearance of impropriety. I believe the only adequate remedy would be disqualification.

The CCPO responded:

> [CCPO]: Judge, frankly, I am shocked and appalled that the public defender brings this motion. [E.G.] was an employee of their office during the time period where Mr. Moore's case was pending. [E.G.] never entered on behalf of Mr. Moore. [E.G.] never spoke to Mr. Moore directly. Although, did appear by docket entries at two video trial setting appearances in front of this court

7

when his attorney of record at that time, [A.C.], was not available.

If [E.G.] – and, therefore, the [CCPO] will be struck off of every matter that if [E.G.] ever stood up and asked the court for another trial date, then his employment by the [CCPO] essentially removes all cases pending during the entire time he has ever worked there. That is not the rule. And what I have seen from these filings, offends me. It should offend the court.

The argument the Public Defender's Office has given to the court fails to mention Rule 4-1.9(b), Note 5, which specifically talks about this issue. And I'll read it to the court: 'Thus, if a lawyer, while with one firm, acquired no knowledge or information relating to a particular client for the firm, and that lawyer, and that lawyer later joined another firm, neither the lawyer can individually, nor the second firm is disqualified from representing another client in the same or related matter even though the interest of the two clients conflict.'

Judge, there's been no evidence from this court that [E.G.] had any knowledge whatsoever of Mr. Moore's trial strategy, met with him, represented him directly. He was never entered in the case. And to take these arguments every single time we have [E.G.] assisting or appearing on behalf of the State of Missouri is an onerous burden on the state and it's ridiculous for this court to have to deal with these issues when the opposing side will not even properly brief this court.

We ask that you strike their motion, or in the alternative, that you deny it.

The court then asked defense counsel if Rule 4-1.9(b) was applicable. Defense counsel responded:

8

[DEFENSE]:  I think part of the issue in this case, the issue here is that [E.G.] appeared on both sides of this case.  Not only did he appear, he appeared on behalf of Mr. Moore.  And at least in one instance he requested a trial date, which on its face would indicate some knowledge that he had been in discussions with the attorney.  I think the court can presume that based on the fact that otherwise a continuance would have simply been met.  So when we look at the full docket, when we look at the full record, I don't think that rule alone can adequately answer this question.

THE COURT: Do you got any case law?

[DEFENSE]: I do not, your Honor.

THE COURT: Okay.  Well, then I'll sustain the prosecutor's motion to strike the motion to disqualify or be stricken from the record.

Immediately after the court struck Moore's motion to disqualify, E.G. entered his appearance on behalf of the CCPO in the case against Moore.  Moore's trial began the following day.  Moore objected to E.G.'s and the CCPO's prosecution of his case both before and after voir dire, and the court noted that Moore would have a continuing objection on the issue.  E.G. assisted with jury selection, delivered the State's opening statement, and examined the State's lead witness.  Thereafter, E.G. appeared on behalf of the State at Moore's sentencing.[5]

This appeal follows.

---

[5] Moore argued in his motion for new trial that the court abused its discretion in failing to disqualify E.G. and the CCPO from his case.  The motion was denied.

9

**Standard of Review**

A trial court's ruling on a motion to disqualify is reviewed for an abuse of discretion. *State ex rel. Peters-Baker v. Round*, 561 S.W.3d 380, 388 (Mo. banc 2018). "The circuit court abuses its discretion when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Teter*, 665 S.W.3d 306, 318 (Mo. banc 2023) (internal quotation marks and citation omitted).

**Point on Appeal**

In Moore's sole point on appeal, he contends the circuit court abused its discretion in striking and overruling Moore's request for disqualification of assistant prosecuting attorney, E.G., and the CCPO, in violation of his rights to due process and a fair trial. Moore argues that E.G. twice represented Moore as a public defender with the MSPD, and thereafter represented the State in the case against Moore, creating an apparent conflict of interest and an appearance of impropriety, which was not waived by Moore, and a presumption of prejudice that was not rebutted.

We agree the circuit court abused its discretion in striking Moore's motion to disqualify and overruling Moore's continued requests for disqualification of E.G. and the CCPO without first ensuring Moore's prosecution was conflict-free, with no appearance of impropriety, after considering all facts and circumstances relevant to the issue, including measures taken by the CCPO to address potential conflicts and avoid the appearance of impropriety.

10

First, the circuit court had no grounds to grant the CCPO's motion to strike Moore's motion to disqualify under Rule 55.27(e). The CCPO asked that the motion be struck under Rule 55.27(e), arguing the motion did not have sufficient factual pleadings or legal gravity to be litigated. Rule 55.27(e) states:

> **Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within thirty days after the service of the pleading upon any party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Rule 55.27 is a rule of civil procedure, applicable to civil actions. *See* Rule 41.01. Moore's case is criminal; his motion to disqualify was not a pleading in a civil action. Rule 55.27 was an improper justification for striking Moore's motion.

Second, Moore's motion set forth sufficient legal grounds and factual allegations to apprise the court of a potential conflict of interest which suggested an appearance of impropriety that necessitated further inquiry. Moore's motion to disqualify cited Rule 4-1.9(b) and Section 56.110.

Section 56.110 provides that, "If the prosecuting attorney and assistant prosecuting attorney be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his or her office…the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause."

**Rule 4-1.9 Duties to Former Clients**, states:

> **(a)** A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a

11

substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

**(b)** A lawyer shall not knowingly represent a person in the same or substantially related matter in which a firm[6] with which the lawyer formerly was associated had previously represented a client:

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 4-1.6 and 4-1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

**(c)** A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter;

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Moore additionally cited Comment [6] to Rule 4-1.9, which states:

Application of Rule 4-1.9(b) depends on a situation's particular facts, aided by inferences, deductions, or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited

---

[6] Comment [3] to Rule **4-1.0 Terminology** states that, "With respect to the law department of an organization, including the government, there is ordinarily no question that the members of department constitute a firm within the meaning of the Rules of Professional Conduct."

12

number of clients and participate in discussions of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such lawyer in fact is privy to information about the clients actually served but not those of other clients. In such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

Moore's motion alleged that E.G. worked for the MSPD while Moore's criminal case was pending. While working for the MSPD, E.G. had unrestricted access to Moore's file, as the MSPD grants general access of all client files to all public defenders assigned in a particular office. The public defenders within the District 19 office regularly discuss client affairs with other attorneys in the office, and until his resignation on October 15, 2021, E.G. freely discussed client affairs with other attorneys in the office. On July 13, 2021, and October 12, 2021, E.G. appeared on Moore's behalf as an employee of the MSPD. On October 18, 2021, E.G. began working for the CCPO as an assistant prosecutor. Thereafter, E.G. assisted in prosecuting the case against Moore.

In *State ex rel. Burns v. Richards*, 248 S.W.3d 603, 604 (Mo. banc 2008), a defense attorney represented a defendant for three months on a Nodaway County possession of controlled substance charge, appearing on the defendant's behalf during a preliminary hearing and arraignment. *Id.* Five months after withdrawing as defense counsel, the attorney filed a felony complaint against the defendant for possession of a controlled substance as the newly-elected prosecuting attorney in Holt County. *Id.* The defendant moved for the prosecutor's disqualification, alleging the prosecutor had confidential information highly relevant to the defendant's defense in the Holt County case due to

13

having worked on the Nodaway County case. *Id.* The circuit court denied the motion on the grounds the defendant had not shown that any confidential information obtained by the attorney in Nodaway County would be used in the Holt County prosecution. *Id.*

The Missouri Supreme Court found the circuit court's refusal to disqualify the prosecuting attorney an abuse of discretion. *Id.* The Court quoted Rule 4-1.9(a) and held that disqualification of the prosecutor was required based on his prior representation of the defendant, without any necessity for the defendant to show actual prejudice, or exploitation of confidential information learned during the prior representation. *Id.* at 604-605.

The Court explained:

> Rule 4–1.9, as applied in the context of criminal prosecutions, is, in effect, a partial codification of the overarching principle that 'as a quasi-judicial officer, the prosecuting attorney must avoid even the appearance of impropriety.' *State v. Ross,* 829 S.W.2d 948, 951 (Mo. banc 1992) (citing *State v. Boyd,* 560 S.W.2d 296, 297 (Mo.App.1977)). In *State v. Clampitt,* 956 S.W.2d 403 (Mo.App.1997), and *State v. Boyd,* the court of appeals reversed convictions because the trial court erred in refusing to grant a motion to disqualify where the prosecuting attorney had previously served as defendant's public defender in the same matter. In both cases, the court of appeals considered whether the prosecutor, to be disqualified, was required to have actual knowledge of facts that would prejudice the defendant in the later prosecution and correctly held that the defendant need not prove actual knowledge, prejudice, or *even actual impropriety. Clampitt,* 956 S.W.2d at 404; *Boyd,* 560 S.W.2d at 297–98.

> An earlier case from this Court, *State v. Burns,* 322 S.W.2d 736 (Mo. 1959), is also instructive. In *Burns,* counsel was hired to represent a defendant, but became the county's prosecuting attorney before the matter went to trial. Reversal was still required even though the case was assigned to an assistant prosecutor. *Id.* at 738. Though the prosecuting attorney

14

revealed no client confidences to his assistant and attempted to seal himself off from the prosecution altogether, this Court held that

> We shall not attempt to weigh or measure the actual prejudice in a case of this kind, and we do not consider a more specific showing of prejudice to be necessary. The acts were such as to infringe upon the generally recognized concepts of proper conduct of prosecuting officials. Specifically, the acts constituted a violation of Rule 4.06 prohibiting the representation of conflicting interests. We do not mean to attribute intentional misconduct to [the prosecutor]; but prosecuting officials, like Caesar's wife, ought to be above suspicion.

*Id.* at 742 (internal citations omitted).

> The unstated rationale of the foregoing cases is that prejudice must be presumed because of the concern that the prosecutor has obtained confidential information while representing defendant that can be used while prosecuting her. And although the foregoing cases are distinguishable to the extent that the prosecuting attorney had represented the defendant in the same matter, rather than in a substantially related matter, the principle behind the holdings applies nonetheless. Where, as here, the two matters in question have such close temporal proximity and similarity of subject matter, the appearance of impropriety is inherent, and a defendant need not plead the use of any confidential information, or show actual prejudice, in a prosecution by her former defense counsel. In this situation, the appearance of impropriety, without more, requires disqualification, and respondent abused his discretion in failing to order it.

*State ex rel. Burns*, 248 S.W.3d at 605 (emphasis original).

Given the foregoing, Moore's motion to disqualify, which cited Rule 4-1.9 and Section 56.110 and alleged facts that, if true, emitted an appearance of impropriety if unrebutted, was sufficient to escape being stricken from the record on grounds of inadequacy. It is undeniable that E.G. represented Moore in connection with Moore's prosecution—E.G. *appeared as Moore's counsel* at two court hearings. Because he had

15

"formerly represented [Moore] in [the] matter," E.G. was prohibited by Rule 4-1.9(a) from "thereafter represent[ing] another person in the same…matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." As a current government employee, E.G. was clearly subject to Rule 4-1.9(a): Rule 4-1.11(d)(1) specifies that "a lawyer currently serving as a public officer or employee…is subject to Rule[ ]… 4-1.9." The fact that defense counsel was unable to cite case law at the hearing on the motion was not fatal; the substance of relevant caselaw was included in the motion and argued at the hearing, and resolution of the matter turned not on caselaw but on the relevant facts being applied to the relevant rules and/or the appearance of impropriety test.

The CCPO raises Rule 4-1.11 on appeal, arguing that Rule 4-1.11 controls this issue pursuant to *State v. Lemasters*, 456 S.W.3d 416 (Mo. banc 2015), because the issue involves former and current government employees. Neither Rule 4-1.11 nor *Lemasters* were raised below as grounds to strike Moore's motion and/or overrule Moore's objections to E.G.'s and the CCPO's prosecution of his case. Nevertheless, where the CCPO produced no evidence to rebut the appearance of impropriety created when E.G. twice appeared on Moore's behalf as a public defender and thereafter began assisting in the prosecution of Moore's case, neither Rule 4-1.11 nor *Lemasters* assist the CCPO here.

*Lemasters* holds, consistent with *State ex rel. Burns* and with Rules 4-1.9(a) and 4-1.11(d)(1), that a former public defender who represented a defendant in a criminal prosecution could not thereafter assist in the prosecution of her former client. In

16

*Lemasters*, an MSPD attorney represented a defendant for one month before beginning employment with the county prosecutor's office. 456 S.W.3d at 418-419. While representing the defendant, the attorney interviewed the defendant for approximately fifteen minutes, and appeared in court on a motion to reduce the defendant's bond. *Id.* at 419. Despite representing the defendant for only one month, and the Court noting the attorney had "little direct contact" with the defendant, the Missouri Supreme Court stated:

> There is no doubt that [the attorney] had a conflict that prohibited her from participating in the prosecution of Lemasters after she joined the NCPAO. She was a 'public officer or employee' when she worked with MSPD; therefore, she was a 'former' governmental attorney for purposes of Rule 4-1.11(a). As a result, under Rule 4-1.11(a)(2), [the attorney's] defense of Lemasters while employed by the MSPD prohibited her from representing the state while employed in the NCPAO because it was the 'same or substantially related matter' and because the MSPD and Lemasters did not consent to [the attorney's] participation in the prosecution.[7]

*Id.* at 420. The prosecution in *Lemasters* readily conceded that the former public defender should take no part in the case, and implemented extensive screening measures to ensure the attorney was insulated from any involvement. *Id.* at 420-421. Consequently, the sole issue in *Lemasters* was whether the circuit court erred in

---

[7] Although Rule 4-1.11(a)(2) is cited, the Court appears to quote Rule 4-1.9(a) which states that, "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 4-1.11 does not use the "same or substantially related matter" language, nor is there a provision therein for waiver by a former client.

17

disqualifying the entire prosecutor's office, and *Lemasters* "set forth the framework to be applied when the disqualification of an entire prosecutor's office is sought," to wit:

> First, the court must determine whether a particular attorney in the office has a conflict prohibiting that attorney's participation in the underlying case. *Lemasters*, 456 S.W.3d at 420. The Rules of Professional Conduct aid the court in determining whether such a conflict exists. *See, e.g.*, Rule 4-1.7 "Conflict of Interest: Current Clients;" Rule 4-1.8 "Conflict of Interest: Prohibited Transactions;" Rule 4-1.9 "Duties for Former Clients;" and Rule 4-1.18 "Duties to Prospective Client." Second, if (and only if) such a conflict exists, the court then must determine whether that individual attorney's conflict is to be imputed to the entire office. *Lemasters*, 456 S.W.3d at 422. A conflict can be imputed in one of two ways: either (1) by the Rules of Professional Conduct, or (2) by the appearance of impropriety test—i.e., whether a 'reasonable person with knowledge of the facts would find an appearance of impropriety and doubt the fairness of the trial' to the defendant. *Id.* at 422-23.

*Peters-Baker v. Round*, 561 S.W.3d at 385.

The Comments to Rule 4-1.11 discuss screening and waiver for situations applicable thereunder.[8] *Lemasters* teaches that, even if the Rules of Professional Conduct are inapplicable, proof of adequate investigation and screening is necessary to rebut a presumption of prejudice resulting from certain facts that emit an appearance of impropriety. "[E]ven if an assistant prosecutor's conflict is not imputed to the remainder of the office under the Rules of Professional Conduct, the remainder of the prosecutor's

---

[8] Comment [2] states, in part, that "Rule 4-1.11(b) sets forth a special imputation rule for former government lawyers that provides for screening and notice." Comment [4] states, in part: "The provisions for screening and waiver in Rule 1-1.11(b) are necessary to prevent the disqualification rule from imposing too severe a detriment against entering public service." Comment [6] states, in part: "Rule 4-1.11(b) and (c) contemplate a screening arrangement." Comment [7] states: "Notice, including a description of the screened lawyer's prior representation and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent."

office must be disqualified if a reasonable person with knowledge of the facts would find an appearance of impropriety and doubt the fairness of the trial." *Lemasters*, 456 S.W.3d at 423.

The *Lemasters* Court ruled that it was unnecessary to disqualify the entire prosecutor's office on the facts of that case, in part because the prosecutor's office "followed the prudent course and screened [the attorney] completely from Lemasters' prosecution." *Id.* at 424. The Court noted that the attorney had not participated in, or assisted with, the State's case against Lemasters in any way. *Id.* Further, not only did the attorney not disclose any information to the prosecutors working on the case, but Lemasters knew nearly five months before his trial that the attorney had been screened from the case. *Id.*

*Lemasters* distinguished *State v. Ross*, 829 S.W.2d 948 (Mo. banc 1992), which found that, while there was no basis in the Rules of Professional Conduct to impute the individual assistant prosecutor's conflict to the remainder of the prosecutor's office, there was still an appearance of impropriety if known to a reasonable person and "equally important," "*there were no facts* that—if known to a reasonable person—would have dispelled the appearance of impropriety and restored confidence in the fairness of the trial." *Lemasters*, 456 S.W.3d at 424 (emphasis original). Citing *State v. Burns*, 322 S.W.2d at 742, *Ross* presumed prejudice where a part time assistant prosecutor worked in the same law firm as defense counsel, "subject to rebuttal only upon a showing that the defendant waived the conflict *and* that steps were taken to insulate the actual prosecution

19

from the conflict." *Ross*, 829 S.W.2d at 952. (Emphasis original).[9]

Here, given legal precedent and that it was factually undisputed that E.G. twice appeared on Moore's behalf as a public defender and had full access to Moore's file during that time, it was reasonable for Moore to have presumed that the CCPO had screened E.G. from participation in the case. There should have been nothing shocking, appalling, offensive, or outrageous about Moore's motion to disqualify and request to investigate to ensure Moore's rights to a fair and conflict-free trial were being respected. At the very least, when disqualification was requested, if the CCPO did not believe the Rules warranted disqualification, the CCPO should have readily offered what measures the CCPO had taken to ensure E.G. had no actual conflict that precluded his or the CCPO's involvement under the Rules, and how those measures rebutted any appearance of impropriety. Legal precedent, including cases relied upon by the CCPO, is replete with examples of the attorney with an alleged conflict testifying to knowledge of, involvement in, and screening procedures implemented for, matters where

---

[9] We recognize that, in *Lemasters*, the Supreme Court stated that "Rule 4-1.9(a)…does not apply to prior representations by current or former 'public officers or employees.'" 456 S.W.3d at 421. *Lemasters* did not purport to overrule *State ex rel. Burns*, however, which explicitly applied Rule 4-1.9(a) to a current county prosecutor like E.G. Moreover, since *Lemasters*, the Supreme Court has not revised Rule 4-1.11(d)(1), which explicitly applies all of Rule 4-1.9 to "a lawyer currently serving as a public officer or employee." Moreover, as explained above in footnote 7, *Lemasters* itself applied the language of Rule 4-1.9(a) to the case before it, in finding that a former public defender was prohibited from participating in the prosecution of a former client. We read *Lemasters* as merely observing that Rule 4-1.9(a) does not directly apply to present government lawyers; "[i]nstead, those conflicts are addressed in…Rule 4-1.11(d), which deals with conflicts arising from prior representations by *current* public officers or employees." 456 S.W.3d at 421. *Lemasters* does not require us to ignore the fact that Rule 4-1.11(d)(1) itself makes Rule 4-1.9—including Rule 4-1.9(a)—applicable to E.G.

disqualification is requested. *See, e.g.*, *Napper v. State*, 679 S.W.3d 574, 583 (Mo. App. 2023); *Lemasters*, 456 S.W.3d at 419; *State ex rel. Peters-Baker*, 561 S.W.3d at 384; *State ex rel. Horn v. Ray*, 138 S.W.3d 729, 733 (Mo. App. 2002). It is detrimental that not one such protective measure occurred here.

Given cases such as *State ex rel. Burns*, which presumed prejudice where a former defense attorney thereafter prosecuted a defendant on a similar, but different, charge resulting in an "inherent" appearance of impropriety, the CCPO should have immediately screened E.G. from any participation in Moore's case and prevented Moore from communicating with other CCPO employees regarding the same. Had this occurred, it may have been unnecessary to disqualify the entire CCPO from Moore's prosecution. As E.G. was allowed to prosecute Moore's case alongside other members of the CCPO, with no assurances that Moore's right to a fair and conflict-free prosecution was protected, we believe a reasonable person with knowledge of these facts would find an appearance of impropriety if the CCPO were allowed to prosecute Moore's charges on remand.

On appeal, the CCPO argues:

> [A] reasonable person with knowledge of the fact that E.G.'s participation in Defendant's case as an assistant public defender was not substantial and instead limited to requesting that the case be set for trial and for trial setting on two occasions when Defendant's attorney of record was unavailable and without filing a written entry of appearance on Defendant's behalf would not find an appearance of impropriety in E.G.'s subsequent participation in the case on the State's behalf. Because there was no reason to believe that E.G.'s limited participation in Defendant's case as an assistant public defender involved any knowledge of confidential information, a reasonable person would not doubt the fairness of the trial based on E.G.'s subsequent participation on the State's behalf. *See State ex*

21

*rel. Burns v. Richards*, 248 S.W.3d 603, 605 (Mo. banc 2008) ('The…rationale…is that prejudice must be presumed because of the concern that the prosecutor has obtained confidential information while representing defendant that can be used while prosecuting [him].').

First, the fact that E.G. never entered his appearance on Moore's behalf while a public defender does not by itself prove that E.G. did not acquire confidential information during his employment with the MSPD, as evidenced by the fact that E.G. never entered his appearance on behalf of the State until the start of Moore's trial, yet gained enough knowledge of Moore's case and the prosecution's trial strategy to conduct voir dire, deliver the opening statement for the State, and examine the State's lead witness.

Second, the CCPO's reference to *State ex rel. Burns v. Richards* disproves its own position. *State ex rel. Burns*, quoted extensively above, found "the appearance of impropriety inherent" where former defense counsel later prosecuted a defendant on a similar charge in another county. *Lemasters* stated regarding *State ex rel. Burns*:

> [I]n *State ex rel. Burns v. Richards*, 248 S.W.3d 603, 605 (Mo. banc 2008), the Court held that a newly elected prosecutor could not bring criminal charges against an individual who, prior to the election, the prosecutor had defended on very recent and very similar charges. In such cases, a reasonable person may well conclude that the facts create an appearance of impropriety and cast doubt on the fairness of the trial, even though there is no actual prejudice, i.e., even though the prosecutor did not—in fact—divulge any confidential communication to, or otherwise assist in, the prosecution. Even a thorough and successful screening process may not be sufficient to remove the appearance of impropriety and dispel the resulting doubt when it is the prosecutor herself, i.e., 'the boss,' who supposedly is being screened from the remainder of her employees, rather than one assistant being screened from the others.

*Lemasters*, 456 S.W.3d at 425.

22

While the CCPO faulted Moore for failing to produce evidence to which he had no access,[10] the CCPO presented no evidence to rebut the appearance of impropriety created by Moore's proven facts. Notably, the CCPO never alleged (much less proved) that E.G. did *not* acquire protected knowledge regarding Moore's case while a public defender, and produced nothing to show that E.G. and the CCPO had taken measures to ensure Moore's rights to a fair and conflict-free trial.[11]

The circuit court abused its discretion in striking Moore's motion to disqualify and overruling Moore's continued requests for disqualification of E.G. and the CCPO without first ensuring Moore's prosecution was conflict-free, with no appearance of impropriety, after considering all facts and circumstances relevant to the issue, including measures taken by the CCPO to address potential conflicts and avoid the appearance of impropriety.

Moore's point on appeal is granted.

---

[10] The CCPO objected to an investigation on attorney client privilege grounds, and does not dispute Moore's statement on appeal that the CCPO refused to allow E.G. to be interviewed. The CCPO's objection to an investigation was essentially granted when the court ruled on a Friday afternoon that the matter would be heard the following Monday at 9:00 a.m., despite Moore's protestations that an investigation could not be accomplished within that time.

[11] While arguing that Comment [5] to Rule 4-1.9 defeated Moore's claim because he failed to provide facts that E.G. had acquired protected knowledge regarding Moore's case while a public defender, the CCPO ignored Comment [6] to Rule 4-1.9 which states that the burden of proof rests upon the firm whose disqualification is sought.

## Conclusion

The judgment below is reversed, and the case is remanded.  On remand, the CCPO is disqualified from trying and/or participating in this case.  The circuit court shall appoint a special prosecutor pursuant to Section 56.110.


_____
Anthony Rex Gabbert, Judge


All concur.